**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CATHLEEN TIBBETTS,                                      Case No. 1:12-cv-894

        Plaintiff,                                      Beckwith, J.
                                                        Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Cathleen Tibbetts filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.  *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in December 2008, alleging disability due to multiple physical ailments and depression, with an onset date of October 28, 2007. After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing was held in February 2011, at which Plaintiff was represented by counsel.  At the hearing, ALJ Paul Yerian heard testimony from Plaintiff and a

vocational expert.  On March 7, 2011, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.

Plaintiff attained the age of 55 and was considered of "advanced age" by the date of the ALJ's written decision.  She graduated from high school, and performed a variety of jobs through October 28, 2007, until she lost that job due to overly frequent illness-related absences.  Plaintiff is widowed, and lives with her boyfriend in a one-story home with a basement.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments:  bilateral carpal tunnel syndrome (CTS), obesity, cervical spondylosis at C5-C6 with radiculopathy; fibromyalgia; osteoarthritis of the knees; osteopenia; diastolic dysfunction; non-insulin dependent diabetes mellitus (NIDDM): hepatitis A, a history of bronchitis; grade I diastolic dysfunctioning; and a major depressive disorder."  (Tr. 12).  The ALJ concluded that none of Plaintiff's impairments, either alone, or in combination, met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Based on the record, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work:

> except the claimant can frequently climb stairs and occasionally crawl. The claimant can occasionally reach overhead with her bilateral extremities and can frequently use her upper extremities for handling, fingering, and feeling.  The claimant can perform simple, repetitive tasks not requiring more than superficial contact with others and not involving strict time or production standards.

(*Id.* at 15).  Based upon the record as a whole including testimony from the vocational expert, the ALJ concluded that Plaintiff remained capable of performing one of her past relevant (unskilled) jobs, as a combination assembler/stamper machine operator.  (Tr.

25).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to either DIB or SSI.  (*Id.*).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by improperly discrediting the evaluations of Plaintiff's treating physician, an examining consultant, and Plaintiff's therapist; (2) by improperly evaluating Plaintiff's credibility; and (3) by relying upon an improper hypothetical to the vocational expert.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence

3

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for either DIB or SSI benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## B. Specific Errors

Before reviewing the specific errors alleged by Plaintiff, it is worth pointing out that Plaintiff had turned 55 years old by the date of the ALJ's decision, which is the relevant date for purposes of characterizing the Plaintiff's age under the Grid. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). Rules 202.02 and 202.05 of Appendix 2 to Subpart P of Part 404 state that a high school graduate of "advanced age" with no transferable skills, who is found to be limited to light, unskilled work, would be presumptively "disabled." Of course, Plaintiff was several years younger as of the date of her alleged onset of disability, and was still 54 years of age as of the date of her hearing. She advanced to the category of "advanced age" just weeks prior to the ALJ's decision. Nevertheless, and somewhat unusually, the ALJ's decision contains no discussion whatsoever of Plaintiff's age. Because the ALJ definitively found Plaintiff to be capable of performing one of her prior jobs, the decision also is bereft of any alternative analysis or consideration of whether there were a significant number of other jobs in the local and/or national economy that Plaintiff might be able to perform. Because these issues have not been addressed by the parties, the undersigned notes them only as an additional ground on which remand may be appropriate.

### 1. Evaluation of Medical Evidence

Plaintiff first asserts error in the ALJ's analysis and evaluation of the medical evidence. She argues that the ALJ improperly credited the mental RFC opinions of a non-examining psychological consultant, who did not have access to Plaintiff's complete

records, over the opinions of her treating psychiatrist and therapist.  In addition, she argues that the ALJ erred by crediting the physical RFC opinions of a different non-examining consultant over the opinions of Dr. Kejriwal, a consultant who examined Plaintiff at the request of the Butler County Department of Job and Family Services.  (Tr. 343-344).  The undersigned agrees that the ALJ erred by rejecting the opinions of Plaintiff's treating psychiatrist in favor of the opinions of a non-examining consultant who did not have access to Plaintiff's later records.  For that reason alone, remand is required.  Consideration of the additional errors alleged by Plaintiff only adds to the Court's conclusion that the ALJ's decision in this case must be reversed and remanded for further development of the record.

### a.  Julie Renner, M.D.

The ALJ erred by giving very little weight to the opinion of Plaintiff's treating psychiatrist, Julie Renner, M.D., with whom she has treated since the onset of her alleged disability.  Dr. Renner completed two Mental Impairment Questionnaires as well as a mental RFC form.  In the more recent evaluation, dated January 6, 2010, Dr. Renner opined that Plaintiff had extreme limitations in concentration, persistence and pace, marked limitations in activities of daily living and maintaining social functioning, and that even a minimal increase in mental demands or change in environment would cause Plaintiff to decompensate.  (Tr. 523-528).  Dr. Renner also opined that Plaintiff would be absent from work more than four days per month.  (*Id.*).

If Dr. Renner's opinions had been accepted by the ALJ, Plaintiff would have been precluded from all work.  Even if only some of Dr. Renner's opinions had been accepted, there is a strong possibility that Plaintiff would have been found to be disabled.  The ALJ discussed Dr. Renner's opinions as follows:

On July 23, 2009, Dr. Renner completed a Mental Status Questionnaire and diagnosed major depressive disorder and a chronic painful physical condition that exacerbates the claimant's depression.  Dr. Renner found that the claimant's concentration and long and short-term memory are affected by chronic pain, fatigue, and mental issues, and as a result, she can only maintain attention for short periods and remember, understand, and follow short and simple directions.  Dr. Renner also opined that the claimant's social interaction is impaired by lapses in attention and concentration (Exhibit 10F).

Dr. Renner completed a subsequent Mental Status Questionnaire and Residual Functional Capacity form on January 6, 2010, and reported that the claimant is responding to treatment, but still experienced chronic pain and acute depression.  She described the claimant's clinical findings as fatigue, lack of energy, decreased focus and concentration, anxiety decreased pleasure, chronic depression, and a blunted affect.

Dr. Renner assessed that the claimant's functional limitation is marked in the areas of activities of daily living and in maintaining social functioning, and extreme in difficulties in maintaining concentration, persistence, or pace and that her chronic depression has caused one or two episodes of decompensation within a 12 month period, each of at least two weeks duration.  She further opined that the claimant's residual disease process has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.  Dr. Renner anticipated that the claimant would be absent for more than four days per month due to her impairments or treatment, and the combination of the claimant's mental and worsening physical issues would make it extremely difficult to sustain employment.

(Tr. 23-24).

The relevant regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R.  §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires "the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2). "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

The ALJ declined to give Dr. Renner's opinions the "controlling weight" that treating physician opinions are usually accorded, instead giving her opinions "very little weight." The ALJ rejected all opinions in which Dr. Renner opined that Plaintiff had

"marked" or "extreme" impairments, as well as the opinion concerning the number of days per month that Plaintiff would be absent,[1] as "inconsistent" with other evidence.

> [T]he conclusion that the claimant had extreme and marked limitations is inconsistent with the doctor's own clinic notes, which indicate that the claimant has a "beautiful garden"…, that she was attempting to start exercising by swimming…and that she tried to exercise by cleaning her house….The doctor's conclusions are also inconsistent with the social worker reports and observations regarding social activities and interaction (visiting family and attending AA meetings), shopping, driving, and maintaining concentration or [sic] at least short periods…. Later treatment notes indicate that the claimant had no problem interaction with her boy-friend of four years and that there had been a positive response to medication resulting in less anxiety….Motivation was noted to be a significant problem….Still later notes from the mental health facility indicate that the claimant continued to go shopping and interact with her family on holidays…, and to display more energy….The conclusions in this report are also inconsistent with the claimant's testimony, which indicated an ability to prepare meals of varying complexity, wash dishes, read, use a computer, help care for pets, watch television and attend AA meetings. The performance of such activities, as well as the references in treatment notes, belie the doctor's conclusions and are indicative of a higher level and degree of functioning than what was reported.

(Tr. 23).

The undersigned has reviewed the entirety of Dr. Renner's notes, as well as the notes of Plaintiff's counselor Ron Ferguson and other records cited by the ALJ.[2]  While a handful of records provide minimal support for the ALJ's comments, the undersigned cannot agree that the record as a whole provides substantial evidence to support the rejection of the vast majority of Dr. Renner's opinions.  Instead, the undersigned finds the ALJ's references to the clinical notes to be misleading and an overall mischaracterization of the record.  For example, there is no evidence that Plaintiff was

---

[1]Although a consulting psychologist offered contrary opinions on the severity of Plaintiff's mental limitations, it is unclear whether any source offered a contrasting opinion concerning the number of days that Plaintiff would be absent from work.  The record reflects that Plaintiff was terminated from her last position due to excessive absenteeism.

[2]Plaintiff's therapist is not considered an acceptable medical source, *see* 20 C.F.R. 404.1527(a)(2), but his notes should be considered in the context of the record as a whole.  As discussed herein, the undersigned finds the ALJ's consideration of Mr. Ferguson's records to have been selective at best.

ever successful in following through on her desire to exercise regularly, and she reported very minimal shopping, reporting to her therapist that she experienced an increase in fatigue for about a month following a grocery shopping trip in which she overdid it. (Tr. 545). There was evidence that Plaintiff uses electric carts when she does shop, and is often accompanied. (Tr. 61, 375-376).

Virtually all of the psychiatric clinical records contain similar ambiguous or conflicting evidence to that noted by the ALJ. The ALJ's comment that "[m]otivation was noted to be a significant problem" is found in the clinical notes, but in context, appears as part of Dr. Renner's description of Plaintiff's deep and chronic depression, and not (as implicitly suggested by the ALJ) as evidence that would be inconsistent with a finding of disability. Similarly, while Plaintiff reported her ability to prepare meals of varying complexity and wash dishes, other evidence suggested that she paced herself (Tr. 60, 214-215, 543), that her ability to perform household chores was severely limited (Tr. 651-653), that it could take her three days to get the dishes done (Tr. 371), and that her ability to prepare meals and attend to personal hygiene were significantly impaired, as was her ability to drive. (Tr. 371, 386). In terms of pet care, she testified that she was not able to walk the dogs, but could only let them out. And, while Dr. Renner's notes contain the statement "she has a beautiful garden," (Tr. 672), that statement in context refers to Plaintiff's attempts to concentrate on the more positive aspects of her life, and follows a statement about Plaintiff attempting to eat a healthy diet. Dr. Renner says nothing about the amount of time Plaintiff herself tends to the garden. Plaintiff testified that she is able to assist with modest watering only if the hose is left out. (Tr. 62).

The Commissioner argues that the ALJ was entitled to reject Dr. Renner's opinions because they were "derived almost exclusively from Plaintiff's subjective complaints, which the ALJ found to be incredible." (Doc. 13 at 10). However, the nature of psychiatry, by definition, requires some assessment of subjective reports. As the Sixth Circuit has noted, rejecting psychiatric evidence simply because it is based on "subjective complaints" can be problematic, since psychiatric reports "do not easily lend themselves to the same degree of substantiation as other medical impairments." *Walker v. Sec. Of Health and Human Servs.*, 980 F.2d 1066, 1071 n.3 (6th Cir. 1992). Thus, courts have found that a psychological opinion that is established "through clinical observations" or "proper psychological techniques" can suffice to demonstrate a "medically determinable" disability. *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990).

Last but not least, Dr. Renner's clinical notes repeatedly cite to two medical studies that document the relationship between depression and chronic pain. (*See, e.g.* Tr. 378, 531, 652, 656). Not insignificantly, other physicians who diagnosed and/or treated Plaintiff's fibromyalgia also specifically noted that Plaintiff's major depression would make the management of her physical illnesses, particularly fibromyalgia, more difficult. (Tr. 445).

Of course, Dr. Renner's and Counselor Ron Ferguson's notes were not reviewed in a vacuum by the ALJ, and likewise are considered in the context of the whole record by this Court. The ALJ chose not to send Plaintiff for a consultative psychological examination, and did not solicit the testimony of a medical expert who might have been able to testify or offer additional evidence on the interplay between Plaintiff's physical and mental impairments (such as her fibromyalgia and chronic depression). Instead, in lieu of Dr. Renner's opinions, the ALJ largely adopted the opinions of Steven Meyer,

Ph.D., a non-examining consultant who completed a mental RFC assessment on January 16, 2009 based solely upon his review of Plaintiff's mental health records at that time. (Tr. 345-348).

Regulations require the Commissioner to generally give greater weight to examining sources than to non-examining sources, and to consider the same factors for review of any medical source opinion (e.g., the treatment relationship, the nature of that relationship, supportability, consistency, and specialization). *See* 20 C.F.R. §404.1527(c). Importantly in this case, it does not appear that Dr. Meyer had access to any of Dr. Renner's opinions at the time of his assessment; certainly, he could not have reviewed the vast majority of her clinical records or of Plaintiff's therapist's records given the date of his review. And, although on August 7, 2009 a second consultant, Dr. Goldsmith, affirmed the January 2009 assessment of Dr. Meyer, (Tr. 428), the ALJ did not rely on Dr. Goldsmith, and there is no suggestion that he reviewed any additional evidence beyond that reviewed by Dr. Meyer.

In *Blakley*, the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). The *Blakley* court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant such as

Dr. Meyer, who has failed to review a complete record, but the ALJ should articulate his reasons for doing so. If the ALJ fails to provide sufficient reasons, the opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

The ALJ committed reversible error in this case under *Blakley*. The ALJ stated: "While the record contains additional reports submitted after the date of [Dr. Meyer's] report, primarily from Dr. Renner, the state agency report remains supported by the preponderance of the medical evidence." (Tr. 24). For the reasons explained above, the undersigned does not find this short explanation of the reasons for crediting Dr. Meyer's consulting opinion over the opinion of Dr. Renner to be sufficient. The gravity of the ALJ's error is compounded by the complexity of Plaintiff's severe physical impairments, including but not limited to fibromyalgia, and the interplay of that disorder with her mental impairment. *See Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066 (reversing non-disability finding where ALJ failed to adequately consider combined effect of plaintiff's back injury and depression).

### b. Consulting Physicians and Evidence Re Fibromyalgia

The ALJ's failure to discuss the severity of Plaintiff's fibromyalgia in particular, together with his apparent focus on the lack of objective records that supported the severity of Plaintiff's pain complaints, gives this Court pause given the undersigned's review of the record as a whole. *See Rogers v. Com'r of Soc. Security*, 486 F.3d 234, 244 (6th Cir. 2007)(reversing where the ALJ improperly focused on objective evidence to discount subjective pain complaints in plaintiff with fibromyalgia, who testified to minimal daily activities). In other cases in which the diagnosis of fibromyalgia is as clear-cut as it is in this record, the severity of that diagnosis is more explicitly considered

and discussed. *See, e.g., Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815 (6th Cir. 1988)(reversing fibromyalgia case); *contrast Brazier v. Sec'y of Health and Human Servs.*, 61 F.3d 903, 1995 WL 418079 (6th Cir. 1995)(Table, upholding rejection of claim of disabling pain where ALJ found that neither diagnosis of fibromyalgia nor resulting pain were well supported in medical records). Indeed, in addition to arguing that the ALJ erred in evaluating her mental RFC, Plaintiff contends that the ALJ erred by failing to fully consider the physical limitations that result from her fibromyalgia, the diagnosis of which was confirmed by at least three physicians. (*See, e.g., Mital* at Tr. 557, 626-627; *Badreddine* at Tr. 445; *Khan* at Tr. 707).

Plaintiff argues additionally that the ALJ improperly rejected the November 24, 2008 opinions of consulting examiner Ashok Kejriwal, M.D., who authored a handwritten report in response to a request from the Butler County Department of Job and Family Services. (Tr. 343-344). As Plaintiff concedes, the report is difficult to read. Nevertheless, Dr. Kejriwal clearly opined that Plaintiff's physical limitations would preclude her ability to sustain competitive employment. The ALJ's rejection of the opinion as "not supported" by Dr. Kejriwal's own clinical findings ordinarily could be affirmed, based upon the undersigned's review of that report, as the amount of detailed support offered by Dr. Kejriwal for his conclusive opinions is underwhelming, to say the least. Nevertheless, given other errors in the ALJ's analysis, the opinion should be reconsidered on remand in the context of the record as a whole.

While rejecting Dr. Kejriwal's opinions, the ALJ chose to give "great weight" to the opinions of a different, non-examining consultant, William Bolz, M.D., (Tr. 515-522), as well as to the opinions of a second examining consultant, Phillip Sweberg, M.D. In his physical RFC assessment dated November 2, 2009, Dr. Bolz opined that Plaintiff

retained the physical capacity to perform a significant amount of light work.  (Tr. 517).
However, Dr. Bolz failed to include any limitations on handling and fingering
notwithstanding Plaintiff's bilateral carpal tunnel syndrome, and did not have access to
many of the later-dated records documenting Plaintiff's fibromyalgia and other
complaints.  Although the ALJ did include mild limitations relating to Plaintiff's carpal
tunnel syndrome, his discussion of her fibromyalgia (other than including the diagnosis
as a severe impairment) was nearly non-existent.

The ALJ also heavily relied upon the reports of consultative examiner Phillip
Sweberg, M.D., dated March 3, 2009 and June 23, 2009.  (Tr. 349-357, 358-365). Dr.
Sweberg diagnosed chronic pain syndrome, obesity, and bilateral carpal tunnel
syndrome.  However, and contrary to both the ALJ's own finding, Dr. Sweberg did not
definitively find fibromyalgia, noting only "chronic pain syndrome, rule out fibromyalgia."
Like Dr. Bolz, Dr. Sweberg simply did not have access to a large number of Plaintiff's
records, including the later-dated records concerning her fibromyalgia.  The two
consultative opinions on which the ALJ so heavily relied, then, do not provide
substantial evidence to support the non-disability finding in light of the record as a
whole.

### 2.  Evaluation of Plaintiff's Credibility

As her second claim of error, Plaintiff argues that the ALJ unfairly evaluated her
credibility, by rejecting Plaintiff's testimony that her physical pain and depression, in
combination with her multiple other impairments, were disabling.  An ALJ's credibility
assessment must be supported by substantial evidence, but "an ALJ's findings based
on the credibility of the applicant are to be accorded great weight and deference,
particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.

Plaintiff relies upon other published fibromyalgia cases such as *Rogers* and *Preston*, *supra*, in which the Sixth Circuit has expressly noted that fibromyalgia patients often have normal muscle strength, normal neurological reactions, and full range of motion. *See Rogers*, 486 F.3d at 244. The undersigned agrees that, as in those cases, the ALJ's opinion generally reflects an over-emphasis on the lack of objective signs of chronic, severe pain as evidence to support his very strong adverse credibility finding. (*See, e.g.,* Tr. 20, noting the lack of evidence demonstrating "most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor…persistent neurological deficits, or signs of never root compromise…[a lack of] significant pathology in the knees, the lumbar spine, or in any weight-bearing joint…[or] identified signs of inflammatory disease…[or] bowel or bladder dysfunction.").

On the other hand, the ALJ's "not credible" finding was based on more than just the lack of objective signs of chronic pain. He also relied upon inconsistencies between the Report of Contact form dated December 30, 2008, shortly after the alleged onset of Plaintiff's disability, and Plaintiff's testimony at her 2011 hearing. In the 2008 written form, Plaintiff reported some housework, walking the dog, watching television and reading, (Tr. 191-192), whereas at the hearing her testimony was that her activities were more limited. The ALJ also relied upon Plaintiff's lack of in-patient care or

emergency room treatment, and lack of medical records supporting her testimony that she had been prescribed and requires a walker. (Tr. 21). The ALJ pointed to other inconsistencies,[3] such as Plaintiff's report that she felt faint almost daily, with shortness of breath, in contrast to clinical records in which she denied those same symptoms to her primary care physician. (Tr. 22). Finally, the ALJ made several comments on his own observations of Plaintiff's apparent ability to focus and concentrate during the evidentiary hearing. (Tr. 14, 20, 39).

Plaintiff asserts that any discrepancies between the activities reported on her 2008 Report of Contact form and her 2011 hearing testimony can be explained by the passage of time and the worsening of her condition. As Plaintiff notes, the ALJ also failed to discuss a May 2009 interim Report of Contact form in which Plaintiff reported worsening symptoms. (Tr. 211). In addition, Plaintiff argues that the alleged inconsistencies were not nearly as striking as the ALJ portrayed; for example, although Plaintiff testified at the hearing that she did not walk the dog, she reported in 2008 that she walked the dog just down her driveway. Plaintiff's explanations may or may not prove to be credible on remand. However, the ALJ's clear error in the evaluation of the medical evidence as a whole, and the corresponding impact that error had on the credibility analysis, require remand on this additional issue.

In addition to the *Rogers* and *Preston* cases cited by Plaintiff, the undersigned notes the strong parallels between the instant record and that presented in *Lawson v. Astrue*, 695 F. Supp.2d 729 (S.D. Oh, 2010). In *Lawson*, the same district judge assigned to this case reversed for an immediate award of benefits based upon that

---

[3]The ALJ also referenced an "anonymous report from a third party, who apparently knows [Plaintiff] well enough to know her social security number…, that the claimant was still working." However, the ALJ stated that he was giving that report "no weight as it is anonymous and contains no specific information regarding the claimant's functional abilities." (Tr. 24).

claimant's severe symptoms of fibromyalgia.   As the undersigned has determined occurred in this case, the ALJ in *Lawson* erred by mischaracterizing the plaintiff's daily activity level through broad descriptions, and by unfairly discounting her subjective complaints.   *Id.* at 737.   In addition, the Court noted that "the ALJ's critique of 'conservative management' and a lack of surgery are simply inapposite to treating fibromyalgia and its symptoms." *Id.* at 737-738. Further, "the absence of neurological deficits, and the presence of normal muscle or grip strength, are precisely the type of clinical findings expected to be seen in fibromyalgia patients."  *Id.* at 738.

### 3.      Alleged Improper Hypothetical to the Vocational Expert

Plaintiff's third assertion of error is that the ALJ improperly formulated Plaintiff's RFC assessment based upon his rejection of Dr. Renner's opinions, and wholesale acceptance instead of Dr. Meyer's opinions.  As discussed, remand is required for re-evaluation of the medical evidence, as well as for a new assessment of Plaintiff's credibility.   While redundant to that analysis, Plaintiff's third assertion of error also requires remand.

### 4.      Remand Under Sentence Four is Appropriate

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed."  *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Id.* at 176 (emphasis added).  In general, an award of benefits should be made only if proof of disability is strong and opposing evidence is lacking, or where

proof of disability is "overwhelming." *Id.* The Sixth Circuit reversed the immediate award of benefits made by the trial court in *Faucher* because of "conflicting evidence in regard to the severity of plaintiff's emotional impairments." *Id.*

The instant case presents a relatively close issue concerning whether remand for further development, or outright reversal for an immediate award of benefits, is the better course. As discussed, in *Lawson* the Court determined that remand was not necessary. However, in *Lawson* the record in favor of disability appears to have been significantly stronger. Several consulting and treating physicians had offered opinions consistent with disability, including a family practitioner who had treated Ms. Lawson for nearly 20 years, a treating specialist in rheumatology, and a specialist in physical medicine and rehabilitation. By contrast, the evidence of the degree of Plaintiff's functional limitations resulting from her fibromyalgia is more limited here. The only physical RFC opinions that were rejected were those of Dr. Kejriwal, whose partially illegible opinions are relatively unsupported save for reference to modest diagnoses that do not appear to include fibromyalgia. As in *Faucher*, given that Plaintiff changed age categories[4] and alleges a worsening of her condition over time, the record also remains ambiguous regarding the date on which Plaintiff may have become disabled.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI be **REVERSED** because it is NOT supported by substantial evidence in the record as a whole. This case should be remanded for further review and evaluation at the administrative level, consistent with

---

[4]In *Lawson* the Court took note of plaintiff's similar age in finding an award of benefits to be appropriate. However, the plaintiff there also had a limited education, and again, the totality of evidence in favor of disability was stronger.

this Report and Recommendation, of:  (1) the medical evidence concerning Plaintiff's major depression; (2) other medical evidence concerning Plaintiff's fibromyalgia and the interaction between her mental and physical impairments; (3) Plaintiff's credibility; and (4) the vocational evidence.   On remand for further development of the record, the ALJ may refer Plaintiff for a consultative psychological examination, and/or solicit other additional medical evidence if necessary, such as the testimony of a medical expert.

 _/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CATHLEEN TIBBETTS,                                    Case No. 1:12-cv-894

       Plaintiff,                                    Beckwith, J.
                                                      Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).